UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SHARON WOOD,

                    Plaintiff,

          -v-                              5:19-CV-1122

SECRETARY OF HEALTH
AND HUMAN SERVICES,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                    OF COUNSEL:

SHARON WOOD
Plaintiff, Pro Se
297 Pumpkin Hill Road
Ashford, CT 06278

HON. CARLA B. FREEDMAN          CHRISTOPHER MORAN, ESQ.
United States Attorney for the   Ass't United States Attorney
     Northern District of New York
Attorneys for Defendant
445 Broadway, Room 218
Albany, NY 12207

DAVID N. HURD
United States District Judge

**DECISION & ORDER**

## I.  INTRODUCTION

On September 11, 2019, *pro se* plaintiff Sharon Wood ("plaintiff"), in her capacity as the Medicare representative for her deceased relative, filed this civil action seeking review of a final decision of defendant Secretary of the Department of Health and Human Services ("Secretary" or "defendant") that denied a reimbursement claim for the cost of a hospital bed.  Dkt. No. 1.

The Secretary has filed a certified copy of the administrative record, Dkt. Nos. 33–34, and the parties have briefed the matter, Dkt. Nos. 38, 40, which will be considered on the basis of the submissions without oral argument.

## II.  BACKGROUND

On December 8, 2016, the beneficiary's family purchased a Freedom Bed, a special type of hospital bed, from ProBed Medical US, Inc. ("ProBed").  R. at 130, 369.[1]  The family submitted a claim to Medicare seeking reimbursement for the purchase.  *See id*. at 319.  The claim was denied on February 3, 2017, *id*. at 319–22, denied again on April 8, 2020, *id*. at 178–81, and finally denied upon reconsideration on August 27, 2020, *id*. at 167–69.

At plaintiff's request, a remote hearing was held before supervisory Administrative Law Judge ("ALJ") Carrie Towner on January 4, 2021.  R. at

---

[1]  Citations to "R." match the Administrative Record.  Dkt. No. 34.

360–74.  Plaintiff, *pro se*, appeared and testified by telephone.  *Id*.  Thereafter, the ALJ issued a written decision denying the claim.  *Id*. at 96–102.  Plaintiff sought further review from the Medicare Appeals Council ("MAC"), which adopted the ALJ's decision on March 1, 2023.  *Id*. at 3–9.

## III.  <u>LEGAL STANDARD</u>

First enacted in 1965, Medicare is a federally funded health insurance program that "provides coverage for individuals who are 65 or older and for those who have certain disabilities."  *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 79 (2d Cir. 2023).  "Medicare initially acted as the primary payer for many medical services, even if a Medicare beneficiary was also covered under another insurance plan."  *Aetna Life Ins. Co. v. Big Y Foods, Inc.*, 52 F.4th 66, 68 (2d Cir. 2022).  But in the 1980s, thanks in part to the ballooning costs of health care, Congress substantially amended the program, transforming Medicare into "a back-up insurance plan to cover that which is not paid for by a primary insurance plan."  *Id*. (quoting *Thompson v. Goetzmann*, 337 F.3d 489, 496 (5th Cir. 2003) (per curiam)).

In its modern form, Medicare is comprised of five "Parts."  *Aetna Life Ins. Co.*, 52 F.4th at 68.  Part A covers inpatient hospital services, which include certain kinds of post-hospital care.  *Barrows. v. Becerra*, 24 F.4th 116, 123 (2d Cir. 2022).  Part B covers a range of outpatient services.  *Id*.  Part C, known as the Medicare Advantage program, lets enrollees choose a third-party

insurer to provide their benefits. *Aetna Life Ins. Co.*, 52 F.4th at 68. Part D provides prescription drug coverage. *Id*. And Part E contains definitions and exclusion for the rest of the Medicare program. *Id*.

As relevant here, Medicare Part B will reimburse providers and enrollees for items and services that are "reasonable and necessary" for the diagnosis or treatment of illness or injury. § 1395y(a)(1)(A). But what is "reasonable and necessary" is not defined by the statute. *New York ex rel. Stein v. Sec'y of Health & Human Servs.*, 92 F.2d 431, 433 (2d Cir. 1991).

Instead, the statute gives the Secretary discretion to determine what items and services are covered under the program. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 506–07 (1994) (noting that Congress has authorized the Secretary to "issue regulations defining reimbursable costs and otherwise giving content to the broad outlines of the Medicare statute").

The Secretary has delegated this administrative authority to the Center for Medicare & Medicaid Services ("CMS"), a "department of HHS that administers Medicare." *Barrows*, 24 F.4th at 123. And CMS, in turn, has contracted with private insurance carriers to administer Medicare Part B benefits. § 1395kk-1; *Schweiker v. McClure*, 456 U.S. 188, 190 (1982).

These Medicare Part B contractors "are responsible for determining whether items or services billed to the Medicare program satisfy the Part B coverage requirements and, if so, the amount to be paid for such items or

- 4 -

services." *Ottinger v. Sebelius*, 2012 WL 5947577, at *3 (D. Vt. Nov. 28, 2012) (citing §§ 1395u, 1395kk-1). This includes various kinds of medical supplies, including "durable medical equipment" ("DME"). §§ 1395k, o, x(s)(6).

But the Medicare contractors do not make coverage determinations in a vacuum. Instead, these carriers "are guided by the Medicare Act, and its implementing regulations, CMS rulings, the Medicare Claims Processing Manual, Medicare Carriers Manual, any National Coverage Determinations, and other policies, guidelines, and statements issued by CMS." *Diapulse Corp. of Am. v. Sebelius*, 2010 WL 1037250, at *1 (E.D.N.Y. Jan. 21, 2010) (Report & Recommendation) (internal initialisms omitted), *adopted by* 2010 WL 1752571 (E.D.N.Y. Mar. 17, 2010).

A Part B beneficiary who receives an unfavorable coverage determination from one of these contractors can seek judicial review. *Heckler v. Ringer*, 466 U.S. 602, 606 (1984). But first, the claimant must work their way through a multi-level administrative review process. 42 C.F.R. § 405.904. At step one, the contractor makes the "initial determination" about whether an item or service is covered or reimbursable. §§ 405.904(a)(2), 405.924(a)(1). Next, "[a] beneficiary who is dissatisfied with the initial determination may request that the contractor perform a redetermination of the claim." § 405.904(a)(2).

A party who is still dissatisfied with the contractor's redetermination may request reconsideration of the claim from a Qualified Independent Contractor

("QIC").  § 405.904(a)(2).  Thereafter, the beneficiary may request a hearing before an Administrative Law Judge ("ALJ").  *Id.*  The ALJ can consider "all the issues" that were brought up at the prior stages of review and, in certain circumstances, can also consider new issues related to the underlying claim for benefits, too.  §§ 405.1032(a), (b).  Finally, the party may request further review by the Medicare Appeals Council ("MAC").  § 405.1102(a).  The MAC may adopt, modify, or reverse the ALJ's decision.  § 405.1128(b).

The MAC's written decision is the "final decision" of the Secretary, which is subject to judicial review in federal court.  § 405.904(a)(2).  But the scope of this judicial review is limited to determining whether (1) the Secretary applied the correct legal standard and, if so, (2) whether the final decision is supported by "substantial evidence."  *Keefe ex rel. Keefe v. Shalala*, 71 F.3d 1060, 1062 (2d Cir. 1995).  "Ultimately . . . the claimant bears the burden of proving her entitlement to Medicare coverage."  *Id.* (citation omitted).

## IV.  DISCUSSION

As an initial matter, plaintiff is *pro se.*  So her filings must be held to less stringent standards.  *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012).  As the Second Circuit has repeatedly warned, documents filed *pro se* "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that [they] suggest[ ]."  *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).

## A. <u>The Medicare Claim</u>

This appeal is about a hospital bed that plaintiff's family purchased for her nephew.[2]  The beneficiary was a Medicare and Medicaid recipient who suffered from Duchenne muscular dystrophy, a serious medical condition that caused him to suffer from "constant, increasing, and ongoing musculoskeletal pain and risk of heart, lung, and liver compromise."

On December 8, 2016, after the beneficiary had suffered a medical crisis "whereby his pain had dramatically" increased, the family bought a Freedom Bed from ProBed Medical US, Inc. ("ProBed").  The Freedom Bed is a high-tech version of a hospital bed that permits the patient to use hand controls and even voice commands to operate its functions.  *See* Pl.'s Mem., Dkt. No. 38 at 11.  The family purchased a refurbished model (for half the price of a new one) out of pocket for $26,500.  R. at 130, 369.  The company did not offer a rental option for the Freedom Bed.  *Id*.

ProBed is a company based "primarily out of Canada."  R. at 130.  While the Freedom Bed "has been FDA-approved for over 20 years," the company is not "listed with Medicare."  *Id*.  Notably, the company cautioned the family about this fact before they purchased the Freedom Bed.  *Id*. at 368.  However, according to plaintiff, the company told the family that "people had gotten

---

[2] The parties reference the beneficiary by his full name, but the administrative record redacts this personal identifying information.  The Court will refer to the decedent as "the beneficiary."

reimbursement for the bed in the past." *Id*. at 368.  Likewise, the family's contacts with the "social services people" also told them that "reimbursement may, may be possible." *Id*. at 369.  Thereafter, the family submitted a claim to Medicare for reimbursement of the cost of the bed.  *See id*. at 319.

On February 3, 2017, the family's reimbursement claim was denied in a Medicare Summary Notice.  R. at 319–22.  Among other things, this written notice stated that "Medicare can't process the items or services on this claim because this supplier doesn't have a Medicare supplier identification number." *Id*. at 321.  This written notice also informed the family that they had until June 8, 2017 to file an appeal.  *Id*. at 317.

The family did not appeal through that process.  Instead, the family filed a claim with the New York State Department of Health ("NYSDOH"), a State agency that administers *Medicaid* (not Medicare).  Medicaid later denied this claim because the item was purchased from a non-Medicaid provider without prior authorization.  R. at 268.  The family appealed that decision, but a fair hearing officer affirmed the denial of that claim.  *Id*.

On January 16, 2018, plaintiff, acting as the beneficiary's representative, sought permission to take an untimely appeal from the original denial of the Medicare claim.  R. at 309.  As the plaintiff's letter explained, the family had "overlooked" the deadline, "along with the entire Medicare process," because they focused on taking the claim to *Medicaid* instead.  *Id*.  That appeal was

eventually dismissed by the Medicare Appeals Council as untimely.  *Id*. at 381.  So plaintiff filed this civil action on September 11, 2019.  Dkt. No. 1.

On January 31, 2020, the Secretary moved to remand this action back to the Department of Health and Human Services ("HHS" or the "Agency") for further consideration.  Dkt. No. 11.  As the Secretary explained, the Agency had not yet had an opportunity to consider plaintiff's reimbursement claim on the merits.  Dkt. No. 11-1.  Instead, the Agency had just denied the claim on timeliness grounds.  *Id*.  Plaintiff consented to this remand.  Dkt. No. 12.

On April 8, 2020, the Medicare contractor (in this case, a company called Noridian Healthcare Solutions) denied plaintiff's claim on the merits.  R. at 178–81.  As this denial letter explained, there were two primary reasons for this denial.  *Id*.  First, the letter stated that plaintiff "did not use a Medicare approved supplier."  *Id*.  Second, the letter stated that the Freedom Bed "is regarded as a capped rental item," which means that it "can only be rented," not purchased outright.  *Id*.  Plaintiff sought reconsideration from the QIC (in this case, a company called Maximus Federal Services).  *Id*. at 174.

On August 27, 2020, the QIC denied plaintiff's request for reconsideration of the claim.  R. at 167–169.  As the letter explained, the QIC reviewed the case and found "that Medicare guidelines have not been met" because the family "did not use a Medicare approved supplier."  *Id*. at 168.  Thereafter, plaintiff sought a hearing before an ALJ.  *Id*. at 123.

On January 4, 2021, supervisory ALJ Carrie Towner conducted a hearing on plaintiff's claim. R. at 360–74. Plaintiff, *pro se*, appeared and testified at the hearing by telephone. *Id.* There, plaintiff acknowledged that ProBed had cautioned the family that it was not a participating Medicare supplier:

> JUDGE TOWNER: Well, it sounds like it, it is a wonderful bed. So let me ask you this. When you purchase the bed - - so this is part of our problem here, the, the, the supplier that you got the bed from did not work with Medicare. Is that correct?
>
> MS. WOOD: Well, that is, that is true.
>
> JUDGE TOWNER: Okay[.]
>
> MS. WOOD: That is true.
>
> JUDGE TOWNER: And, and they told you this up ahead in advance of when you bought the bed.
>
> MS. WOOD: Yes, yes. The, the supplier made it clear that they . . . they were not part of Medicare. They made it clear that people had gotten reimbursement for the bed in the past, and that the FDA had approved it for over 20 years. The - - they - - my sister-in-law, the caretaker . . had been advised by her social services people that, that reimbursement may, may be possible.
>
> . . . .
>
> but it seemed as if there would be a chance of reimbursement, and it seemed as if in the emergent situation that was there, even though the supplier was not supporting the decision, and the doctor was for it, but had not code for it, we went ahead. And it was one of those situations where you go in blind trust, I suppose.

R. at 368–69.  Thereafter, ALJ Towner issued a written decision finding that plaintiff's claim for the Freedom Bed was not covered or payable under Medicare.  *Id*. at 96–102.  Plaintiff sought review of the ALJ's decision from the Medicare Appeals Council ("MAC").  *Id*. at 28–35.  But the MAC issued a decision that adopted the ALJ's findings on March 1, 2023.  *Id*. at 3–9.

The MAC's decision qualified as the "final decision" of the Secretary for purposes of judicial review.

### B.  Procedural History

On April 25, 2023, plaintiff filed a "notice of appeal" with the Court.  Dkt. No. 17.  Plaintiff also moved for leave to proceed *in forma pauperis* ("IFP Application").  Dkt. No. 18.  This caused some administrative confusion in the Clerk's Office, which initially docketed plaintiff's filing as a direct appeal to the U.S. Court of Appeals for the Second Circuit.  *See* Dkt. No. 19.

On April 27, 2023, the Court straightened things out in a lengthy Text Order.  Dkt. No. 20.  There, the Court noted that the March 3, 2020 Remand Order—which had sent the claim back to the Agency for a determination on the merits—explicitly permitted plaintiff to file a "notice of appeal" to return this action to federal court after she had fully and finally exhausted the Agency administrative process.  *Id*.  Thus, the Court restored this case to the active docket, denied the IFP Application as moot because plaintiff had

already paid the filing fee, and stayed proceedings until it could get more information about the status of the Agency proceedings that had taken place in the three years since the Court had last touched the case. *Id.*

As the Court explained, it was unclear whether plaintiff had yet received a "final decision." Dkt. No. 20. As the Court further explained, although it was likely that she wanted to return to this Court in accordance with the terms of the March 3 Remand Order, it was also possible that plaintiff did, in fact, intend to take a direct appeal to the Second Circuit (which almost certainly would have been premature). *Id.* So the Secretary was ordered to file a detailed status report with answers to these questions within thirty days. *Id.*

Thereafter, plaintiff withdrew her appeal to the Second Circuit, Dkt. Nos. 22, 25, and the Secretary filed his status report, Dkt. No. 23. The Secretary's status report confirmed that plaintiff had received a "final decision" from the Agency; *i.e.*, the MAC's decision denying her claim on March 1, 2023. *Id.*

On May 18, 2023, the Court lifted the stay and directed the Clerk to set a briefing schedule for plaintiff's appeal of the Agency's final decision on her reimbursement claim. Dkt. No. 24.

The matter is now fully briefed and ready for a determination.

## C. **Plaintiff's Appeal**

Broadly construed, plaintiff's appeal contends that the reimbursement claim was wrongfully denied because the beneficiary's doctor provided them

with preauthorization paperwork.  Pl.'s Mem. at 9.  As plaintiff explains in
her brief:

> Further preauthorization was pursued, as well as was
> following all rules to completion, prior to purchase.
> Preauthorization was complicated by the fact the local
> supplier refused to provide any assistance in
> qualifying the Freedom Bed in any way, or to look into
> it.  No forms or guidance were offered.

*Id*. at 10.  In addition, plaintiff argues that the Medicare contractor used the
wrong classification code to deny the claim.  *Id*. at 10–13.  Because there is no
specific code for the Freedom Bed, the initial determination letter used a code
that does not match the full description of the bed.  *Id*.  In plaintiff's view, the
Medicare contractor should (and still could) be more helpful by providing
beneficiaries with more information about how to submit a claim.  *Id*. at 15.

Upon review, the Secretary's final decision must be affirmed.  As an initial
matter, the Medicare statute provides that "no payment may be made . . . for
items furnished by a supplier of medical equipment and supplies unless such
supplier obtains . . . a supplier number."  42 U.S.C. § 1395m(j)(1)(A).  To get a
supplier number, the supplier has to enroll in the program and meet certain
approval requirements.  § 1395m(j)(1)(B); 42 C.F.R. § 424.57(b)–(d).

Plaintiff acknowledges that ProBed, a primarily Canadian company, was
not a participating Medicare supplier.  And plaintiff acknowledges that the
beneficiary's family was informed of this fact prior to the purchase of the

bed.  The written decisions of the ALJ and the MAC relied on this statutory limitation to affirm the denial of coverage.  R. at 4, 99–101.  Those findings are based on substantial evidence and represent a proper application of clear statutory language.  Accordingly, there is no basis on which to disturb them.

Even putting this issue aside, the item or service in question still has to be covered by the Medicare statute.  As relevant here, the statute only permits the purchase of certain specified kinds of "inexpensive and other routinely purchased durable medical equipment."  42 U.S.C. § 1395m(a)(2).  Hospital beds, which tend to be relatively expensive, are considered to be "other items of durable medical equipment."  § 1395m(a)(7).  Those items must be rented on a monthly basis rather than purchased outright.  § 1395m(a)(7)(A)(i).

There is no exception in this clear statutory language that might permit a purchase (rather than a rental) merely because the bed is refurbished rather than brand new.  And although plaintiff suggests that this dispute might be attributable to a coding error (because the Freedom Bed does not match the code assigned by Noridian, the Medicare contractor), the statute and relevant regulations make clear that a hospital bed—no matter the brand name or type or code—must initially be rented rather than purchased.[3]

---

[3]  As the Secretary points out, ProBed did not submit a claim to Medicare because it does not participate in the Medicare program.  Instead, Noridian—the Medicare contractor—assigned a billing code after the beneficiary's family made a claim on their own.  The code was necessary for administrative purposes.

The Court recognizes that the Freedom Bed provided a substantial benefit to the beneficiary.  Indeed, the record reflects that the beneficiary's doctors also approved of the Freedom Bed.  R. at 352.  But as the Second Circuit has explained, it is the Secretary's responsibility to make determinations about what items or services are actually covered under the statute.  *See Goodman v. Sullivan*, 891 F.2d 449, 450 (2d Cir. 1989); *Willowood of Great Barrington, Inc. v. Sebelius*, 638 F. Supp. 2d 98, 105 (D. Mass. 2009) (noting that the Medicare statute empowers the Secretary with "wide discretion to determine whether the numerous medical services and items covered by Medicare are 'reasonable and necessary' in particular circumstances").

As a final matter, the MAC did not err in concluding that the beneficiary's family bore financial responsibility for the cost of the Freedom Bed.  Under the statute's "limitation on liability" provision, an individual beneficiary may be relieved from liability if he "did not know (and could not reasonably have been expected to know) that a service [or item] was not covered, but the provider of [the service or item] did know (or could have been expected to know).  *Ottinger v. Sebelius*, 2012 WL 5947577, at *7 (D. Vt. Nov. 28, 2012) (citing *Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71, 78 n.5 (2d Cir. 2006)).

But this savings clause does not apply to this fact pattern.  As plaintiff acknowledges, the beneficiary's family was made aware that ProBed did not participate in the Medicare program before they chose to purchase the

Freedom Bed.  And as the MAC's written decision emphasized, the record indicates that the beneficiary's family "knew, by using a supplier not enrolled in Medicare, that payment *may not* be made."  R. at 9.  Even so, the family proceeded with the purchase of the bed.  *Id.*  Accordingly, the Secretary did not err in refusing to reimburse the purchase cost.

## V.  <u>CONCLUSION</u>

The Secretary applied the correct legal standard and supported his coverage determination with substantial evidence.  So the Court cannot offer plaintiff any relief.  But she may seek further judicial review before the U.S. Court of Appeals for the Second Circuit.

Therefore, it is

ORDERED that

1.  The Secretary's motion for a judgment on the pleadings is GRANTED;

2.  Plaintiff's motion for a judgment on the pleadings is DENIED;

3.  The Secretary's final decision is AFFIRMED; and

4.  Plaintiff's complaint is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly, close the file, and mail to plaintiff an appeals packet with information sufficient to enable her to make an informed decision about whether she would like to pursue a further appeal to the U.S. Court of Appeals for the Second Circuit.

IT IS SO ORDERED.

Dated:  January 3, 2024
        Utica, New York.

David N. Hurd
U.S. District Judge